GAUDIN, Judge.
Alleging breach of a real estate listing contract, Century 21 — Loraso Real Estate, Inc. filed suit in the 24th Judicial District Court against Dr. Gasper Lazzara for a commission after Dr. Lazzara sold the listed property, which is situated at 1799 Stumpf Boulevard in Gretna, Louisiana and known as the Wright Center.
After numerous pleadings and after additional parties were added to this complex litigation, the trial judge found that the commissions paid by Dr. Lazzara to various agents were legally sufficient and that he owed nothing more. Also, the trial judge ruled on the disposition of a certain $18,-000.00 promissory note, which was part of the commission paid to Century 21 — Loraso Real Estate, Inc.
On appeal, Century 21 — Loraso Real Estate, Inc. contends that it had the sole and exclusive right to sell Dr. Lazzara’s real property and that the district judge erred, generally, in (1) finding that a $70,000.00 commission had been paid to Vic Loraso and Darlene McDonald and (2) in rejecting appellant’s claim for a larger commission.
The testimony and record, however, support the district court judgment signed February 9, 1987. We affirm it for the following reasons.
Dr. Lazzara testified that he signed three listing agreements. The first and second contracts were for six months each and both expired. On September 26, 1981, a third contract was signed by Dr. Lazzara and Ms. McDonald, who was then an employee of Dr. Lazzara and an agent for Century 21 — Loraso Real Estate, Inc. Ms. McDonald said that her brother Vic Loraso had signed the first and second listing contracts while she signed the third as a convenience for Vic.”
All three agreements stated that the selling commission was subject to negotiation.
When the act of sale for $2,975,000.00 was passed before notary public Robert Creely in December, 1982, Loraso was not present but Ms. McDonald was. She accepted a check for $52,000.00 and a promissory note for $18,000.00, which, she said, “... was supposed to be a commission on the Wright Center.”
Loraso contends that he and Dr. Lazzara never reached an agreement about the fee and that, in any event, Ms. McDonald was not authorized by him to accept a commission.
A total of $145,000.00 (over five per cent) was paid by Dr. Lazzara in commissions, $70,000.00 to his agents and $75,000.00 to the purchaser’s agents, R & C Holdings, Inc. and McGriff and Company. Loraso does not seriously question the payment of commissions to the buyer’s agents. Instead, the thrust of his district court action and his primary contention on appeal is that he earned and was due a larger commission.
An act of sale had been scheduled earlier — in September, 1982 — but it wasn’t passed because Loraso had recorded his listing agreement, possibly creating a lien and clouding the title. Later, Loraso can-celled the inscription, saying that he and Dr. Lazzara had reached a compromise. Loraso testified at trial that an agreement had not been reached. He said that the recordation was cancelled because Creely ”... told me that the purchasers were in the process of getting out if I did not withdraw this document.”
The cancellation, Loraso insists, did not deprive him of his right to proceed against Dr. Lazzara.
In evidence, and no doubt given strong consideration by the trial judge, is a letter dated February 23, 1983 from Ms. McDonald to Dr. Lazzara, in which she states:
“This letter is to confirm the commission on the salé of the Wright Center on December 18, 1982. On that date $52,-000.00 was shown as commissions paid to me. An additional amount of $18,000.00 *1206 as deferred commissions will be paid on October 1, 1983 ($10,000 + 9% interest) and October 1, 1984 ($8,000 + 9% interest).
“Of this $52,000.00 paid $12,000.00 was returned to you which represented $5,500.00 escrow ($5,000 + $500 interest) for escrow money paid to Century 21 Loraso Real Estate not relinquished to you for the Wall Boulevard property. The other $6500.00 was transfer of your interest on J.T. Properties which you expressed was to be assumed by Vic Lora-so. The balance of the $40,000.00 was split and Vie was given $10,000.00 cash and the other $10,000.00 was used for debts he owed to Donna Loraso, notes to Fifth District Savings for the mortgage on my mother’s house and a list of others. The other $20,000 to Darlene McDonald was used to pay attorney fees and debits incurred for Bold Builders building my house in which they left $52,000 unpaid to creditors. As I see it Vic really received all of the commissions of this sale because of his gross mismanagement of monies that were not his to use.”
While it does appear from this letter that Loraso had knowledge of and acquiesced in the setting of appellant’s fee at $70,000.00, Ms. McDonald said that Dr. Lazzara coerced her into signing it. The trial judge, in his assigned “Reasons for Judgment,” said:
“The Court is not impressed with Ms. McDonald’s testimony concerning any force brought against her by Doctor La-zarra. It has been shown through the testimony, that at the time Ms. McDonald wrote the letter explaining in detail the disbursement of the commission paid, Doctor Lazzara was in Florida. “Jefferson Bank & Trust filed an intervention in this matter against Mr. Loraso claiming an assignment of any money which may be awarded to Loraso for real estate commissions. Loraso stipulated to the assignment of funds to Jefferson Bank & Trust.”
This was a hard matter to try. Red herring issues emerged and there was considerable irrelevant testimony. In essence, this case was decided on credibility. If the trial judge believed Loraso and his sister and not Dr. Lazzara, he would not have found, as written in his “Reasons for Judgment,” that "... the $70,000.00 paid to Ms. McDonald and Loraso was a fair commission based on the agreement which was entered into ...”
Credibility calls and factual findings of a trial judge are not to be disturbed on appeal unless manifestly wrong. Here, there was a reasonable basis and supportive evidence for the trial judge’s determinations. See Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Dr. Lazzara did not try to pay a diminished commission. John Hill, an expert real estate commercial broker called by appellant, testified that in a transaction such as this, the usual commission would be between four and six per cent. The amount paid by Dr. Lazzara fits well into this bracket.
With regard to the $18,000.00 promissory note, the appealed-from judgment ordered it divided equally between the Jefferson Bank and Ms. McDonald. This adjudication was in line with the testimony and evidence accepted by the trial judge.
The district court judgment of February 9, 1987 is affirmed, with appellant to bear costs.
AFFIRMED.